UNIVERSAL TOWING COMPANY, Plaintiff,

v.

UNITED BARGE COMPANY, Defendant (two cases).

Nos. 74–777C(3), 74–837C(3).

United States District Court, E. D. Missouri, E. D.

June 23, 1977.

As Corrected June 24, 1977.

Memorandum and Order July 20, 1977.

D. Sherman Cox, P. Terence Crebs, Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, Mo., for plaintiff in No. 74–777C(3).

D. Sherman Cox, G. C. Stribling and Fordyce & Mayne, St. Louis, Mo., for plaintiff in No. 74–837C(3).

82

Edwin D. Akers, Jr., Thompson & Mitchell, St. Louis, Mo., for defendant.

## MEMORANDUM

WANGELIN, District Judge.

These consolidated cases involve disputes over the use and operation of a barge fleeting site located in the St. Louis harbor area. Plaintiff Universal Towing Company provides towing, mooring, and fleeting service in the St. Louis area. Fleeting service consists of organizing barges for tows, transferring them from one tow to another, and holding them in fleet for later disposition. Defendant United Barge Company is a "contract carrier" that tows cargo between St. Louis and points north of St. Louis. Defendant requires the services of fleeting companies such as plaintiff and does no fleeting of its own.

Some time in 1968 defendant became concerned about the delay it was experiencing in fleeting south-bound tows and starting back up the river with north-bound tows. To shorten this "turn-around" time, defendant began to look for a fleeting site of its own. An area was rented known as the Venice Fleet. Defendant contracted with another fleeting service to operate the Venice Fleet. That service found Venice Fleet an unprofitable venture and, after giving notice, left the area on December 16, 1970.

Defendant began negotiations with plaintiff in October or November of 1970 concerning plaintiff's possible operation of the Venice Fleet. A tentative agreement was reached in late November or early December. A written agreement was signed August 1, 1971. Although plaintiff began doing all of defendant's fleeting in January of 1971, the Venice Fleet was never used. Two "fleet barges" sank in the area and defendant was required by its lease with the owner of the Venice Fleet to remove those barges.

Plaintiff brought one of these actions to declare the August 1, 1971 contract void. The other action was brought to recover payment for fleeting services provided for defendant. Defendant counterclaimed in both actions seeking rent under the contract for the Venice Fleet and asking for its expenses in removing the two fleet barges. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. §§ 1 and 14.[1]

After considering the entire record and the credible testimony, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. In August of 1969 defendant acquired the use of land and riparian rights located on the Mississippi River at the Union Electric Company Venice Power Plant site, known as the Venice Fleet.

2. Until December 16, 1970 Twin City Barge & Towing Company operated the Venice Fleet on behalf of defendant and performed for defendant its fleeting and harbor services required in the St. Louis harbor.

3. Prior to December 16, 1970 plaintiff tentatively agreed to assume operation and responsibility for the Venice Fleet and to perform defendant's harbor and fleeting services. This agreement was conditioned upon plaintiff's ability to obtain insurance coverage and the agreement by the parties upon a written contract. Plaintiff did not accept responsibility for the Venice Fleet on December 16, 1970.

4. One of the two fleet barges at Venice Fleet sank in February of 1971. This sunken barge did not significantly affect the utility of the fleeting area. Between January and August of 1971 defendant made various repairs to the Venice Fleet and the area was in a useable condition on August 1, 1971. The second fleet barge sank after August 1, 1971.

5. The parties signed an agreement on August 1, 1971. The plaintiff agreed to use the Venice Fleet for fleeting defendant's barges. Plaintiff was to pay Two Thousand Eight Hundred Dollars ($2,800.00) per

1. Plaintiff alleges that the contract is void because it violates certain anti-trust laws.

month in rent. The agreement lasted until August 1, 1974 and was not terminated sooner by plaintiff. Plaintiff has not paid rent due defendant under this agreement and defendant has made demand for payment. Thirty Six (36) months of rent totally One Hundred and Nine Thousand Dollars ($109,000.00) is due.

6. No representations were made to plaintiff from defendant concerning the condition of the Venice Fleet as an inducement to signing the August 1, 1971 agreement. Plaintiff was well aware of the condition of the area and assumed responsibility for maintaining it as of August 1, 1971. Although the fleet was useable at that time, no warranties of fitness for use were made by defendant. The contract adopted terms of the lease between defendant and the lessor providing for acceptance by plaintiff of the fleet "as is".

7. The negotiations preceding the contract did not include representations that defendant's business was a "package deal" with fleeting business from Federal Barge Lines Company.

8. Defendant gave plaintiff all of its harbor and fleeting business as required by the contract. Defendant owes $87,714.18 to plaintiff for fleeting services but has set off this amount against the rental due.

9. The cost to defendant of removal of the second fleet barge which sank in the Venice Fleet was One Hundred Fifty Thousand Dollars ($150,000.00). At the time this barge sank plaintiff had assumed responsibility for the Venice Fleet. Plaintiff was responsible for keeping the barge afloat and failing that, to salvage it when it sank. Defendant could have removed the second barge several years earlier than it was removed at a cost of One Hundred Thousand Dollars ($100,000.00).

## Conclusions of Law

The outcome of this suit depends upon the existence of an alleged oral contract of December 16, 1970 and the validity of the written contract of August 1, 1971. Defendant's counterclaim concerning removal of the barges can succeed only if plaintiff is found liable on one or both of these contracts.

■ The evidence was insufficient to show that plaintiff assumed responsibility for the Venice Fleet on December 16, 1970. Testimony concerning conversations between officers of plaintiff and defendant was contradictory. From these conversations the Court could find that an oral contract was reached. However, defendant's subsequent conduct and the statements of its officers indicate that no agreement was reached. Thus, the defendant must assume the loss caused by the sinking of the first fleet barge in February of 1970.

It is clear that the August 1, 1971 written contract was binding. Plaintiff's allegation that fraudulent representations were made is not supported by the record. The delay from December until August in signing the contract was not caused by defendant's failure to repair the fleeting area. Plaintiff would not have waited that time for repairs and then signed a contract before they were made. Rather, the delay the obviously occasioned by defendant's attempt to negotiate a higher rent. Plaintiff had already surveyed the Venice Fleet and knew exactly what it was getting when it signed the contract.

Plaintiff's allegation that defendant did not give plaintiff all its fleeting business as required by the contract is also without foundation. Plaintiff got all of defendant's harbor business, thus benefiting from the bargain, until it became apparent that plaintiff would not use the Venice Fleet. This refusal adversely affected defendant's turn-around time which was the very reason for renting the Venice Fleet.

■ Finally, plaintiff's claim that the contract violated anti-trust laws is totally frivolous. Contrary to plaintiff's claims no evidence was presented to make a case under either *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969), or *Pennsylvania Water & Power Co. v. Consolidated Gas, Electric Light & Power Co.*, 184 F.2d 552 (4th Cir. 1950).

In retrospect, the Venice Fleet was not a good business deal for anyone. There was simply not enough fleeting volume to justify its use. However, this conclusion cannot excuse plaintiff from performance under the contract. The impact of this decision is that plaintiff is liable for rent under the contract and for allowing the second fleet barge to sink.

The second barge sank in 1971. It was not removed by defendant until 1976. During this time the cost of removal escalated rapidly both because of the accumulation of silt and debris and inflation. Plaintiff argues that defendant should have mitigated its damages by removing the barge earlier.

 Defendant's evidence tended to show that it had made some attempts to remove the barges without success. The evidence also showed that high water during several of the years in question made removal difficult. However, the evidence does not account for a five year delay. Balancing these considerations, it appears that defendant should have attempted removal sooner. Judgment on the counterclaim will be reduced accordingly.

## MEMORANDUM AND ORDER

This matter is before the Court upon plaintiff Universal Towing Company's motion to amend the Court's Judgment of June 23, 1977. To the extent that this motion is based upon a clerical error in computing rental, it will be granted. It will be denied in all other respects and it should be noted that the Court's computation of reduced damages for barge removal did include salvage value. Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion to alter or amend Judgment be and is DENIED; and

IT IS FURTHER ORDERED that plaintiff's motion to correct the Court's Judgment be and is GRANTED in part; and

IT IS FURTHER ORDERED that the Court's Judgment of June 23, 1977 awarding defendant United Barge Company's rental of One Hundred and Nine Thousand Dollars ($109,000) be and is reduced to One Hundred Thousand Eight Hundred Dollars ($100,800).